Argued and submitted October 24, 1994, reversed and remanded April 12, 1995

## U.S. NATIONAL BANK, N.A.,
Trustee of the Fred Anderson Testamentary Trust,
*Respondent,*

*v.*

## Douglas ANDERSON
and Jason Anderson,
*Appellants.*

(94CV084; CA A84033)

892 P2d 1027

Patrick R. Foley filed the brief for appellants.

Gary G. Jones argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

## RIGGS, J.

In this FED action, plaintiff is the successor trustee of the testamentary trust of Fred Anderson. Verna Anderson is Fred's widow, and lives in the Curry County residence that, under the terms of his will, is an asset of the trust. Defendants Douglas and Jason Anderson are Fred's and Verna's son and grandson, respectively, and they live in the residence along with Verna. The issue, in general terms, is whether the nature of plaintiff's and Verna's interests in the residence are such that plaintiff has the authority to evict defendants, without Verna's participation or approval, and in the absence of any evidence that the eviction is necessary to safeguard the trust property. The trial court held that it did, and gave judgment for plaintiff. Defendants appeal. We reverse.

Defendants contend that Verna has a life estate in the residence and, according to them, that interest carries with it the right to allow persons of her choice to share the residence with her. They rely principally on the following provision of the will:

"My Trustee shall permit my wife, if she so desires, and for the balance of her natural life, to reside in the residence which I own in Curry County, Oregon at the time of my death. If said residence shall become unusable by my wife during her lifetime my Trustee may in his sole discretion sell the same and purchase any other residence as an asset of my said trust for the use of my said wife for the balance of her natural life. All such usage by my said wife of any such residence shall be free of any charge to her * * *."

Plaintiff contends that it is the "fee owner" of the property and that that status, together with the powers conferred on it by Fred's will, allows it to exclude any person except Verna from occupancy of the residence. The principal provision of the will on which plaintiff relies states that the trustee has authority:

"To do all acts, except as herein otherwise specified, in his judgment needful or desirable for the proper and advantageous management of the trust estate, to the same extent and with the same effect as might legally be done by an individual in absolute ownership and control of the said property."

The trial court concluded that the issue could be resolved on the basis of the language of the will, and took no evidence. It concluded that Verna's interest fell short of a life estate, and consisted instead of the lesser status of a "life interest." The court also concluded that plaintiff held the equivalent of fee title and, under the will, could limit occupancy of the residence to Verna herself.

■  Defendants assign error to the trial court's conclusions regarding the legal status of both Verna and plaintiff.[1] We agree with them in both respects. As has often been noted by the Oregon courts, a trust creates two interests — one of legal ownership or control in the trustee and one of beneficial ownership or interest in the beneficiaries. *See, e.g., White City Water System v. Dept. of Rev.*, 7 OTR 274, 279-80 (1977), *aff'd* 285 Or 255, 590 P2d 724 (1978).

■  Moreover, the will itself does not purport to give the trustee authority corresponding to that of a fee owner. It qualifies the grant of authority quoted above with the proviso "except as herein otherwise specified." The provision of the will relating to Verna's rights in the residence for the balance of her life comes within those exceptions. Plaintiff's interest is not plenary and akin to that of an outright owner. Its title and authority are subject to the interests of the trust beneficiaries and to the limitations in the will.

Whether Verna's status is that of a life tenant or something less is more problematical, but we attach less significance to that question than do the parties. The relevant question is what rights in the residence the testator intended for Verna to enjoy, quite apart from the nature of the estate that was created. In our view, that question cannot be answered on the basis of the will's language alone; it is ambiguous, and evidence of testamentary intent is necessary.

Plaintiff places heavy emphasis on the language that the trustee shall permit "my wife * * * to reside in the [Curry County] residence." It concludes that it is not obliged to let anyone else live there, even at her behest. However, in describing Verna's interest if a replacement residence is

---

[1] Defendants also contend that the court erred by not modifying the trust to comport with the testator's "obvious intent." We agree with plaintiff that the district court had no authority to do that in this action. *See* ORS 128.135(2).

purchased by the trustee, the same paragraph of the will provides that it will be "for the *use* of my said wife." (Emphasis supplied.) The following sentence then refers to "[a]ll such *usage* by my said wife of *any* such residence." (Emphasis supplied.) That sentence appears to relate to both the original and the replacement residences described in the paragraph.

Reading the paragraph as a whole, there is at least an ambiguity as to whether a more expansive use of the Curry County residence by Verna was intended than the right to live there by herself, as the first sentence alone might imply. The language is susceptible to the meaning that she enjoys a generalized right to use the residence, that goes beyond a simple right of occupancy. Indeed, to construe the will as plaintiff does would ascribe to the testator the intent to give Verna greater rights in a replacement residence than in the original one that the will specifically describes and that the new one could replace only if the first became unusable. The inherent unlikelihood that that was what the testator intended makes more graphic the existence of the ambiguity and the need for an evidentiary hearing and further consideration in the trial court.[2]

Reversed and remanded.

---

[2] We do not imply that the hearing on remand must necessarily be confined to evidence of testamentary intent, or that relevant new issues may not be considered in the light of the evidence that is developed.