No. 15          April 23, 2019          353

## IN THE OREGON TAX COURT
## REGULAR DIVISION

**BERT BRUNDIGE, LLC,**
*Plaintiff,*

*v.*

**DEPARTMENT OF REVENUE,**
State of Oregon,
*Defendant.*

(TC 5325)

On cross-motions for summary judgment, Plaintiff (taxpayer) and the Department of Revenue (Defendant) differed over whether taxpayer's items for the construction, maintenance, reconstruction, or improvement of logging roads were exempt from ad valorem property taxation under ORS 307.827(2)(b). The court determined that the items were not exempt under the general exemption for equipment used for "logging or forest management operations" under ORS 307.827(2)(b)(A) because of the existence of the specific exemption for "excavators used in logging road construction, maintenance, reconstruction or improvements" in ORS 307.827(2)(b)(C). Further, the court held that a genuine issue of material fact existed as to whether taxpayer's items were "excavators," under the technical meaning intended by the legislature in ORS 307.827(2)(b)(C). Therefore, neither party was entitled to prevail as a matter of law.

Oral argument on Cross-Motions for Summary Judgment was held in the courtroom of the Oregon Tax Court on September 20, 2018.

James R. Dole, Watkinson Laird Rubenstein, PC, Grants Pass, filed the motion and argued the cause for Plaintiff.

Kristen M. Gallino, Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant.

Decision rendered April 23, 2019.

**ROBERT T. MANICKE, Judge.**

### I.   INTRODUCTION

Plaintiff Bert Brundige, LLC (taxpayer) appeals from a Magistrate Division Decision denying exemption from property tax for certain equipment pursuant to ORS

307.827(2)(b).[1] The tax year at issue is 2016-17. After reviewing the parties' cross-motions for summary judgment and being fully advised of the issues at oral argument, the court denies both motions because neither party has shown that no genuine issue of material fact exists as to whether taxpayer's equipment constitutes "excavators."

## II. FACTS

The following facts are not in dispute. Taxpayer is an Oregon limited liability company with its primary place of business in Douglas County, Oregon. Taxpayer is in the business of constructing, maintaining, and decommissioning logging roads. Taxpayer seeks exemption for the following equipment owned by taxpayer and used solely for "logging road construction, maintenance, reconstruction or improvements, including the closing or obliterating of existing forest roads" (the "Equipment"):[2]

> Asset number 33 – Loader with bucket
> Asset number 12 – Loader
> Asset number 17 – Grader
> Asset number 24 – Roller
> Asset number 25 – Bulldozer
> Asset number 28 – D8 Bulldozer
> Asset number 34 – Back Loader
> Asset number 37 – Roller

The parties have made the following additional stipulations: (1) an "excavator" and a "loader" with or without a bucket are "commonly known" as different pieces of heavy equipment; (2) an "excavator" and a "grader" are "commonly

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to the 2015 edition.

[2] At oral argument, the parties clarified that two items are not at issue: a D8 bulldozer (Asset 22) (¶ 12(d)) and a track hoe (Asset 36) (¶ 12(i)). (Taxpayer assigned the asset numbers in its exemption application.) The D8 bulldozer does not qualify as "logging equipment" because it was not manufactured after 1992. *See* ORS 307.827(2)(a) (defining "environmentally sensitive logging equipment" as equipment that was "originally manufactured after 1992"). The track hoe qualifies as an "excavator" exempt under ORS 307.827(2)(b)(C). *See* statements of Dale and Ennis, Oral Argument, Sept 20, 2018, 10:42:35 (so confirming). The parties also agree that, if the court holds for taxpayer under taxpayer's alternative argument that the Equipment consists of excavators under ORS 307.827(2)(b)(C), at least one of the two rollers (Asset 37) (¶ 12(j)) would not be exempt.

known" as different pieces of heavy equipment; (3) an "excavator" and a "bulldozer" are "commonly known" as different pieces of heavy equipment; and (4) an "excavator and a "roller" are "commonly known" as different pieces of heavy equipment.

Defendant Department of Revenue (the department) argued in the Magistrate Division that taxpayer's claim was time-barred but did not renew that defense in the Regular Division.

## III.   ISSUE

Whether taxpayer's Equipment used to perform logging road construction in tax year 2016-17 is entitled to exemption under ORS 307.827.

## IV.   ANALYSIS

ORS 307.827 provides an exemption from Oregon property tax for machinery and equipment that (1) was "originally manufactured after 1992," and (2) is "logging equipment" as defined in ORS 307.827(2)(b). The parties do not dispute that each item of Equipment was originally manufactured after 1992. (Taxpayer's application, so asserting.) At issue is whether taxpayer's Equipment qualifies as "logging equipment" under ORS 307.827(2)(b), either because it is used in activities listed in subparagraph (A), or, alternatively, because it "consist[s] of excavators" pursuant to subparagraph (C).[3]

The relevant text reads:

"(2)   As used in this section:

"*****

"(b) 'Logging equipment' means machinery and equipment:

"(A)   *Used* in logging or forest management operations involving timber harvest, including the felling, bucking, yarding, loading or utilization of timber, logs or wood fiber in the forest, or used in reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement or thinning;

"***; or

---

[3] Subparagraph (B) is not at issue in this case.

"(C)   *Consisting of excavators used in logging road construction*, maintenance, reconstruction or improvements, including the closing or obliterating of existing forest roads."

ORS 307.827(2)(b) (emphases added).

Whether taxpayer's Equipment qualifies as "logging equipment" is a question of statutory interpretation. The court's task is to discern the intent of the legislature that enacted the statute. ORS 174.020 (codifying rule). The statute's text and context are given primary weight in the court's analysis, for it is "[o]nly the text of a statute [that] receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). After examining text and context, the court may consider legislative history of the statute where that history appears useful to the court's analysis. *Id*. at 171-72 (citing ORS 174.020). If the legislature's intent remains unclear, the court may then resort to general maxims of statutory construction to aid in resolving the remaining uncertainty. *Id*. at 172.

Each party asserts, and the court agrees, that subparagraphs (A) and (C) of ORS 307.827(2)(b) must be read together, with subparagraph (A) providing a broad exemption from tax for post-1992 machinery and equipment used for certain purposes, and subparagraph (C) providing a narrow exemption to the extent items are within the definition of an "excavator" and are used for logging road construction.[4] The parties disagree about whether subparagraph (C) narrows the scope of subparagraph (A) in a way that prevents the exemption under subparagraph (A) from applying to the Equipment, and they disagree about the definition of "excavator" in subparagraph (C). The court considers each of these issues in turn.

A.   *Taxpayer's Primary Argument: Exemption Under Subparagraph (A)*

Taxpayer's primary argument is that the Equipment is entitled to exemption under subparagraph (A) of ORS

---

[4] For convenience, the court generally uses the phrase "logging road construction" to include all of the activities listed in subparagraph (C).

307.827(2)(b) because (1) the Equipment is used solely to construct logging roads; (2) the phrase "logging or forest management operations" includes the activity of constructing logging roads; and (3) the Equipment does not consist of excavators.[5] In other words, taxpayer asserts that subparagraph (C) narrows subparagraph (A) by excluding an *excavator* from the definition of "logging equipment" unless the excavator is used for logging road construction. ("[F]or 'excavators,' the exemption is available only when used for logging road construction, maintenance and obliteration.")

The department agrees that subparagraph (C) narrows subparagraph (A), but the department argues that subparagraph (C) does so by excluding *logging road construction* from "logging or forest management operations" or from any other activity listed in subparagraph (A). According to the department, when an item of equipment is used to build roads, it must be an "excavator" in order to fit within the definition of "logging equipment." Because taxpayer stipulated that its items of Equipment are "not commonly known as excavators," the department argues that taxpayer's Equipment is not "logging equipment" and is therefore not eligible for exemption under ORS 307.827(2)(b).

As a textual matter, the court agrees with the department's interpretation of the narrowing function of subparagraph (C) of ORS 307.827(2)(b). Subparagraph (A) contains a broad list of enumerated activities; the use of post-1992 machinery and equipment in any listed activity renders the machinery and equipment exempt from tax as "logging equipment." Thus, subparagraph (A) imposes a single condition on exemption for post-1992 machinery and equipment: it must be used in a listed activity. Taxpayer argues, plausibly, that the activity of logging road construction, although not expressly named in the text of subparagraph (A), nevertheless is included in one of subparagraph (A)'s broad and undefined terms, such as "logging or forest management operations." However, that argument does not help taxpayer, because subparagraph (C) imposes *two*

---

[5] The court reads taxpayer's motion to assert, solely for purposes of taxpayer's primary argument under subparagraph (A), that none of its items of Equipment are excavators.

conditions on the exemption: not only must the equipment be used in a discrete set or subset of activities (logging road construction), the equipment also must be part of a discrete subset of post-1992 machinery and equipment (excavators). Reading subparagraphs (C) and (A) together, assuming that excavators are a subset of all machinery and equipment, and that logging road construction is a subset of "logging or forest management operations," because the legislature specified in subparagraph (C) that the exemption applies if both conditions are satisfied, an interpretation that allows the exemption under subparagraph (A) if only one such condition is satisfied (use in logging road construction) would conflict with subparagraph (C). In order to give effect to both subparagraphs, the court concludes that post-1992 machinery and equipment used in logging road construction must consist of excavators in order to be exempt under subparagraph (A). *See* ORS 174.010 (court to construe multiple provisions so as to give effect to all).

Taxpayer interprets subparagraph (C) as restricting "excavators," and not the activity of "logging road construction." According to taxpayer, other, *non-excavator* equipment used in logging road construction—*i.e.*, taxpayer's Equipment—is exempt under subparagraph (A) because logging road construction is an essential part of "forest management operations." Under taxpayer's interpretation, when read together, subparagraphs (A) and (C) mean: (1) in general, *all* machinery and equipment used in logging road construction is "logging equipment" because road construction is an essential part of "forest management operations"; except that (2) excavators are "logging equipment" *only* when used in logging road construction.

Based solely on the text, the court finds it plausible to interpret subparagraph (C) as limiting the class of "excavators" eligible for exemption, as taxpayer asserts, but that does not mean that subparagraph (C) does not also limit the extent to which the activity of logging road construction gives rise to exemption. The legislature may have intended to limit both.[6] Based on the text it is possible to conclude

[6] Taxpayer argues that the "or" in ORS 307.827(2)(b) indicates the legislature's intention that "logging equipment" include "*anything* fitting any of the

that, for the exemption to apply, not only must machinery and equipment used in logging road construction be an excavator, as the department asserts, the equipment also *must* be used in logging road construction, as taxpayer asserts. In other words, just as an excavator cannot be exempt unless it is used in road construction, equipment used in other logging or forest management operations likewise may not be exempt if it consists of excavators.

It is undisputed that taxpayer uses its Equipment solely to perform logging road construction. The court therefore does not decide whether, as a corollary to taxpayer's primary argument, excavators used in activities other than road construction can be exempt under subparagraph (A). Excavators *not used* in road construction are not at issue in this case. The court concludes only that, based on the text of subparagraph (A), with context supplied by subparagraph (C), taxpayer's Equipment is not logging equipment exempt under subparagraph (A) to the extent that its items are non-excavators used in logging road construction.

The legislative history is consistent with the court's conclusion. The property tax exemption for environmentally sensitive logging equipment appeared in two separate bills during the 1999 legislative session: House Bill (HB) 2093 (1999) (A-Engrossed), and HB 2045 (1999), Or Laws 1999, ch 957, § 3. *See Journal of the House of Representatives*, 70th Legislative Assembly - 1999 Regular Session, H-9, H-10, H-21. HB 2093 was a wide-ranging bill "relating to taxation" that included a broad exemption for logging equipment:

> "*All* logging equipment is exempt from ad valorem property taxation.
>
> "(2)   As used in this section, 'logging equipment':

descriptions of ORS 307.827(2)(b)(A), (B), 'or' (C)." The court agrees with taxpayer's interpretation of "or" as an inclusive statutory connector within the context of subsection (b). *See Burke v. DLCD*, 352 Or 428, 437, 290 P3d 790 (2012) ("Whether the disjunctive 'or' is inclusive or exclusive will depend on its context."). Here, however, "or" does not mean, as taxpayer suggests, that equipment can be exempt under both (A) *and* (C), depending on whether it is used in road construction. On the contrary, the correct reading is that machinery and equipment used in the listed activities is exempt "logging equipment" pursuant to subparagraph (A) *and* "excavators used in road construction" are "logging equipment" pursuant to subparagraph (C). That is the reading that harmonizes subparagraphs (A) and (C).

"(a)   Means any tangible personal property, including but not limited to logging *machinery and equipment, used in logging or forest management operations* involving one or more of the following:

"(A)   Timber harvest, including the felling, bucking, yarding, loading or utilization of timber, logs or wood fiber in the forest;

"(B)   Logging road construction, maintenance, reconstruction or improvements, or the closing or obliteration of existing roads;

"(C)   Slash burning, slashing, scarification, stream rehabilitation, miscellaneous forest management and fire trail construction;

"(D)   Water quality or fish and wildlife habitat protection activities in the forest, including but not limited to stream and riparian improvement, sediment control measures or other forest habitat protection measures; or

"(E)   Reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement, thinning or other miscellaneous forest management work."

HB 2093 § 5 (1999) (A-Engrossed) (emphases added).[7] HB 2093 therefore made express what taxpayer argues the enacted text of ORS 307.824(2)(b) implies—namely, an intent to include equipment used in logging road construction within the meaning of "logging or forest management operations."

Although the legislature stopped work on HB 2093 on May 12, 1999, after the bill had passed the House Commerce Committee, the same language quoted above reemerged two months later in mid-July as the proposed "-2" amendments to HB 2045.[8] *Compare* HB 2093 § 5 (1999) (A-Engrossed), *with* HB 2045-2 § 3 (July 14, 1999). However, in selecting from a number of competing proposed amendments, the Senate Revenue Committee rejected the proposed

---

[7] Other portions of HB 2093 imposed time-based and other limitations not relevant here.

[8] The -2 amendments to HB 2045 eliminated "scarification" from the portion of the list that included "slash burning" but otherwise contain the same relevant text appearing in HB 2093 (A-Engrossed) (reprinted above).

-2 amendments and instead adopted text that deleted "logging road construction" from the list of activities included within the meaning of "logging or forest management operations." *Compare* HB 2093 §§ 4-6 (1999) (A-Engrossed), *with* HB 2045-4 (July 8, 1999), HB 2045-6 (July 14, 1999), *and* HB 2045 (1999) (A-Engrossed). The court considers that change persuasive contextual evidence of the legislature's intent that, notwithstanding any understanding that "logging or forest management operations" generally includes logging road construction, the exemption should *not* apply to equipment, other than excavators, that is used in logging road construction.

B.   *Taxpayer's Alternative Argument*

In its alternative argument, taxpayer argues that its items of Equipment, except for one roller (or possibly two rollers), are entitled to the exemption under subparagraph (C) because all are used to excavate, *i.e.*, "dig into the earth."[9] The department contends that taxpayer's reliance on the general term "excavate" is inconsistent with both the text of the statute and the technical meaning of the term "excavators" intended by the legislature.

The statute does not define "excavators." To ascertain the meaning of an undefined statutory provision, Oregon courts follow the general rule that "words of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (citing *State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992) (illustrating rule)); *see also Christensen v. Dept. of Rev.*, TC 5285, WL 4350064 at *13 (Sept 7, 2018) (consulting dictionary definition to determine the meaning of the statutory phrase "facilitate collection" within Oregon's Taxpayer Bill of Rights). As an exception to the general rule, "[w]hen the term has acquired a specialized meaning in a particular industry or profession *** [the court] assumes that the legislature used the term

---

[9] The court reads taxpayer's motion to assert, solely for purposes of taxpayer's alternative argument under subparagraph (C), that all of its items of Equipment are excavators. ("In the alternative, its equipment is entitled to the tax exemption under ORS 307.827(2)(b)(C) because it is used to excavate in the process of work on logging roads.")

consistently with that specialized meaning." *Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 280, 311 P3d 497 (2013). In that circumstance, the court determines the meaning of the term based on how the term is used and understood in the technical trade, using sources that best accord with the legislature's intent. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 300-01, 337 P3d 768 (2014); *see generally Mueller v. PSRB*, 325 Or 332, 339, 937 P2d 1028 (1997) (discussing difference between ordinary and technical terms; holding that "personality disorder" is term of art within the medical profession). The court need not determine that the legislature was "fluent" in the technical meaning of terms used in a specialized field in order to adopt the technical meaning. *Comcast*, 356 Or at 300. The court need only be satisfied that "the legislature's intent was to borrow from a technical field." *Id.* at 301. Sources contemporaneous with the enactment of the statute provide the best evidence of the legislature's intended meaning. *Id.* at 296 n 7 ("In consulting dictionaries, however, it is important to use sources contemporaneous with the enactment of the statute."); *see, e.g.*, *Daniel N. Gordon PC v. Rosenblum*, 361 Or 352, 361 n 3, 393 P3d 1122 (2017) (quoting *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) ("The proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events.")

The court's first task, therefore, is to determine whether "excavator" had a specialized meaning in the logging industry when the legislature adopted what is now ORS 307.827. At oral argument, taxpayer acknowledged that the statutory term "excavator" has a meaning familiar to persons in the logging industry and that this definition may be different from the dictionary definition. However, taxpayer has not provided any such technical definition to the court, nor does taxpayer agree that the court should consider the 1999 legislature to have intended to apply an industry-wide technical definition in subparagraph (C). ("It is one thing for the industry to understand the somewhat more restrictive term, it is another thing to say the legislature intended to bootstrap in [subparagraph] (C) when it used the term 'consisting of excavators.'") Rather, taxpayer asserts, paradoxically, that the definition of the technical term "excavator"

that best corresponds with the legislature's intent is the dictionary definition.[10]

The department contends that the statute's text, context, and legislative history all support its argument that "excavator" is a technical term, one which the legislature intended to be defined according to its meaning within the logging industry, as opposed to the broad dictionary definition asserted by taxpayer. However, like taxpayer, the department has not proffered a specific definition of "excavator." Citing the legislative history, the department argues that "ORS 307.827(2)(b) is specifically directed at an industry that uses the term 'excavator' to refer to a particular piece of heavy equipment that can be identified on sight." Accordingly, the department argues merely that an "excavator" is a particular piece of heavy equipment, and not, as taxpayer argues, virtually any "equipment used to excavate the earth."

The court turns now to the legislative history of ORS 307.827(2)(b) to determine whether "excavator" was a specialized term in 1999, understood within the logging industry to mean a particular type of heavy equipment, and if so, whether the legislature nevertheless intended "excavator" to have the dictionary meaning ("any of various machines (such as a steam shovel) for excavating earth") or some different, specific meaning.

A document entitled "Environmentally Sensitive Harvest Machinery" presented to the 1999 legislature by representatives of Associated Oregon Loggers includes "Excavator w/ multiple attachments" in a list of more than a dozen items under the matrix headings "Equipment Type" and "Multi-Functional." Exhibit L, House Committee on Commerce, Subcommittee on Trade and Economic Development, HB 2093,

---

[10] Taxpayer argues that the legislature intended the phrase "excavator" to be defined according to its dictionary definition for the following reasons: (1) there is no evidence the legislature intended "excavator" to be defined according to its technical definition; (2) the meaning of "excavator" may have changed over time; and (3) the legislature did not intend the term to be defined according to the "narrow definition" proposed by the department. In support of that contention, taxpayer cites what it claims is conflicting language within various legislative documents produced for the Senate Revenue Committee during its consideration of the logging equipment exemption in HB 2045.

April 26, 1999, Associated Oregon Loggers, *Environmentally Sensitive Harvest Machinery*; *see* Tape recording, House Committee on Commerce, Subcommittee on Trade and Economic Development, HB 2093, April 26, 1999, Tape 44, Side A (dialogue between Rep Montgomery and Mike Miller of Associated Oregon Loggers (discussing matrix generally)); Exhibit, Senate Committee on Revenue, HB 2045, July 12, 1999, Associated Oregon Loggers, *Environmentally Sensitive Harvest Machinery*. Other items listed separately under the same headings include a "Track skidder/dozer or dozer," and a "Backhoe w/ attachments." *Id*. (Exhibit). The court views this as evidence that Associated Oregon Loggers perceived dozers and backhoes as different from excavators. Another item listed under the same headings is a "Single-grip or double-grip processor head *w/carrier (shovel/loader/excavator)*," from which the court infers that Associated Oregon Loggers thought of an excavator as a type of "carrier" distinct from a shovel or a loader. *See id*. (emphasis added).

The overall purpose of the table seems to have been to persuade the legislature that different "types" of equipment possessed certain "performance elements" capable of delivering various "environmental benefits" that would help to justify the exemption. Although the table does not define "excavator" or any other item, the court concludes that the logging industry viewed "excavator" as a specialized term referring to a distinct type of equipment. Moreover, the fact that the matrix was entered into the legislative record in more than one committee, and discussed on at least one occasion, suggests that the legislature was aware that the industry held that view.

The court also finds it significant that the 1999 legislature generally narrowed the scope of the proposed exemption for logging equipment over the course of the session. The court already has discussed one such instance—the removal from the class of machinery and equipment eligible for exemption of items other than excavators used in logging road construction.[11] The legislature also reduced the

---

[11] Along with the possible corollary removal of excavators from the class of machinery and equipment eligible for exemption when used for purposes other than logging road construction.

reach of the exemption from "any tangible personal property" to "machinery and equipment"; eliminated exemption for power saws, hand tools, certain blocks and pulleys, shop equipment, and support equipment; and restricted the exemption for older, existing equipment by requiring that the equipment have been manufactured not more than eight years before the assessment date. *Compare* HB 2093 § 5 (1999) (A-Engrossed), *with* HB 2045 §§ 3-5 (1999) (Enrolled).

All of these changes appear to have been informed and motivated by repeated testimony from local government groups concerned about projected loss of tax revenue, which culminated in a compromise among the Governor's office, county assessors, and the logging industry. *See* HB 2045-A, Senate Committee on Revenue, Staff Measure Summary, July 12, 1999 ("This amendment is the result of discussions between the logging industry, Governor's office and local governments."). Testimony provided to the Joint Conference Committee by a representative from the Oregon Association of County Assessors clarified that the counties had agreed not to oppose the bill on assurance that, under Oregon law, tax exemptions are to be strictly but reasonably construed. Tape recording, Joint Conference Committee, HB 2045, July 20, 1990 (statement of Tim Linhares) ("If there is any ambiguity whether the equipment qualifies \* \* \* it would be up to property owner to provide additional information as to why that would be exempt."); *see, e.g.*, *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 294, 502 P2d 251 (1972) (stating rule). The court concludes that the legislature's amendments in apparent response to fiscal concerns make it more likely that the legislature intended "excavator" to have a specialized industry meaning that is narrower than simply "any of *various* machines (as a steam shovel) for excavating earth," as taxpayer asserts. *Webster's Third New Int'l Dictionary* 791 (unabridged ed 2002) (emphasis added).

The court now turns to definitional sources presented by the parties, in an effort to stake the boundaries of the specialized industry meaning of "excavator." Taxpayer provided the court with photographs of five items of equipment (an item commonly referred to as an excavator, a wheeled excavator, a backhoe, a bulldozer with a scoop, and a tracked loader), accompanied by a declaration identifying

each item by type and describing the manner in which it can "dig into the earth or 'excavate.'" These materials arguably[12] support taxpayer's position that the Equipment performs a function within the ordinary meaning of "excavate," but they do not inform the court about whether any of the items of Equipment were within the specialized meaning understood within the industry in 1999.

The department directed the court to the current homepage of Associated Oregon Loggers and provided the court with the web addresses for various commercial retailers of heavy equipment. Although these sources provide some context for the way the word "excavator" is used in the logging industry today, the court ultimately finds these sources unenlightening because they are not contemporaneous with the enactment of ORS 307.827(2)(b). *See, e.g.*, *Daniel N. Gordon PC*, 361 Or at 361 ("In consulting external sources, we are mindful that sources contemporaneous with the enactment of the statute are generally better evidence of the legislature's intended meaning than anachronistic sources.").[13]

The court has considered whether to attempt *sua sponte* to identify the industry definition of "excavator" that would have been available to the 1999 Oregon legislature. Although courts sometimes have made their own such determinations, *e.g.*, *Comcast*, 356 Or at 287-89, the court considers it inappropriate to do so here. First, at the trial level, the court believes it should try to draw on the results of the adversarial process rather than rely solely on its own inquisitorial efforts. More importantly, given the current factual record, any such undertaking by the court would not resolve the issue. The parties' stipulations do not

---

[12] It is unclear whether the photographs are of actual items of the Equipment for which taxpayer seeks exemption.

[13] As defined by the Associated Oregon Loggers website, "excavator" means "tracked road builder, digging bucket; digs-lifts-loads dirt & rock to build forest roads; lifts bridge parts and culverts. Works on road construction and at the forest rock quarry." Associated Oregon Loggers, Inc., Logging Machines, *available at* http://www.oregonloggers.org/Forest_Logging_Machines.aspx (accessed Apr 16, 2019). However, at the time of the statute's enactment in 1999, the Associated Oregon Loggers webpage did not contain a definition of "excavator." Associated Oregon Loggers, *available at* https://web.archive.org/web/19990125101841/http://www.oregonloggers.org/ (Jan 25, 1999) (accessed Apr 16, 2019).

explain the phrase "commonly known" nor its relation to the technical definition of "excavator" that was available to the legislature in 1999. Furthermore, the stipulations do not describe the Equipment in terms of specific features or characteristics that might distinguish an excavator from other types of machinery and equipment, and taxpayer's photographs—assuming they actually show items of taxpayer's Equipment—lack detail and the kind of narrative description that likely would be necessary to apply the definition.

## V.    CONCLUSION

In sum, the court has concluded that taxpayer's Equipment is not exempt under subparagraph (A) of ORS 307.827(2)(b) because it is used solely to construct logging roads, and therefore not for any purpose specified in subparagraph (A). The court also has concluded that the legislature intended the word "excavator" in subparagraph (C) to have a technical meaning as understood within the industry in 1999. The remaining question is whether the parties have demonstrated that taxpayer's items do or do not "consist[] of excavators," such that either movant is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 419-20, 939 P2d 608 (1997). In the absence of both a definition and the facts to which to apply it, the court must conclude that a genuine issue of material fact remains, and that neither party is entitled to prevail as a matter of law. Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is denied; and

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment is denied.